**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RAHEEM LA'MONZE PLATER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV-22-780-R** |
| | ) | |
| **CHRISTINE TOPPING et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this action

pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights. The matter

has been referred to the undersigned magistrate judge for initial proceedings consistent

with 28 U.S.C. § 636(b)(1)(B). Before the Court is Defendant Gayle Rowley's Second

Motion for Summary Judgment (ECF No. 87) to which Plaintiff has filed a Response. (ECF

No. 91). Also before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 90)

to which Defendant Rowley filed a Response. (ECF No. 92). Based on the foregoing

reasons, the undersigned recommends Defendant Rowley's Motion be granted and

Plaintiff's Motion be denied.

**I. Procedural background**

In his Second Amended Complaint, Plaintiff asserts that after he suffered an

alleged sexual assault by a cellmate at the Lawton Correctional Facility (LCF), and that

Defendant Rowley, in his individual capacity, displayed deliberate indifference toward

Plaintiff's serious mental health needs in violation of the Eighth Amendment. Defendant

Rowley has filed a Motion for Summary Judgment arguing that the record does not establish a genuine issue of material fact in support of this claim. (ECF No. 87). Mr. Plater has requested summary judgment based on his contention the record establishes Defendant Rowley is liable. (ECF No. 90).

## II. Standard of Review

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the non-moving party. *Pepsi–Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo*, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). While the Court construes a pro se litigant's pleadings liberally, such a litigant nevertheless is held to the same rules of procedure as are binding on other litigants. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Comm. for First Amend. v. Campbell*, 962 F.2d

2

1517, 1526 n.11 (10th Cir. 1992). Although all facts are construed in favor of the non-movant, he still has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (internal quotation marks omitted).

A *pro se* non-movant must "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1180 (10th Cir. 2013).

Parties may establish the existence or nonexistence of a material disputed fact through:

> • citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

> • demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

And while the court liberally construes a *pro se* plaintiff's complaint, that plaintiff must adhere to the same rules of procedure that are binding on all litigants. *Kay*, 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a *pro se* plaintiff to the requirements of Federal Rule of Civil Procedure 56 is required. With respect to those

requirements, the Supreme Court instructs that the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. 317, 322–23 (1986). In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.*

### III. Undisputed Facts

1.    Plaintiff alleges that in August, September, or October 2020, or February 2021, while incarcerated at LCF, he was sexually assaulted by his cellmate, Claiborne Johnson, II, when they were both housed in Unit 6 Cell 205. (ECF No. 34-3:1, 3, 5; ECF No. 90-1:11).

2.    Defendant Rowley became Plaintiff's LCF Case Manager on or about April 25, 2022. (ECF No. 87-3:3).

3.    Plaintiff did not report inmate Johnson's sexual assault until late April or early May 2022, when he referenced it in a Grievance he submitted to LCF Case Manager Sandi Ghannam. (ECF No. 34-3:1, 5; ECF No. 34-4:1-2).

4.      During the subsequent investigation conducted pursuant to the Prison Rape

Elimination Act (PREA), Plaintiff explained,

> [B]etween midnight to morning, I was housed in 6A205 with Clayton
> Johnson II. I left the top bunk to use the restroom. No blanket was available
> to hide myself while using the restroom. So I pulled my pants down, sat on
> the toilet and my then cellmate approached me with a sharpened
> instrument and forced me to perform oral sex upon him.

(ECF No. 34-4:3; *see also* ECF No. 34-2:34).

5.      On May 3, 2022, Plaintiff saw Dr. Kimberly Weaks after LCF Security

referred him for a Mental Health PREA Interview. (*Id.* at 34-35).

6.      Plaintiff described the sexual assault and explained that he had not

previously reported it because he feared retaliation. (*Id.* at 34).

7.      Plaintiff denied suicidal ideation and symptoms of Post Traumatic Stress

Disorder (PTSD).[1] Dr. Weaks discussed mood elevation and coping/stress management

strategies with Plaintiff. She also discussed the chronic behavioral triangle for trauma

reactions. (ECF No. 34-2:34)

8.      On June 6, 2022, Plaintiff saw Dr. Ahsan Khan and in discussing the sexual

assault, reported experiencing anxiety, paranoia, and nightmares regarding the sexual

assault. (*Id.* at 37).

9.      In his Medical Assessment, Dr. Khan noted a "suspected" diagnosis of PTSD,

added two medications to Plaintiff's regimen, and scheduled a two-month follow up. (*Id.*)

---

[1] Plaintiff testified during the present litigation that he cannot identify PTSD symptoms. (ECF No.
90-1:3).

10.    On June 29, 2022, Plaintiff was seen in medical again after reporting that

he had not been receiving help with his PREA concerns. The corresponding progress note

provided:

> [H]ousing is his biggest issue[] and although the alleged perp was moved,
> [Plaintiff] has to stay on same unit with triggers of the alleged assault and
> passes alleged perp in hallway weekly, which is also triggering. He stated
> he is sleeping better, but experiences panic attacks, feels overwhelmed and
> helpless. He stated he would prefer to be in a different environment. Patient
> asked about diagnosis – this was discussed as well as coping/stress
> management tools.

(*Id.* at 38).

11.    In late June 2022, LCF Case Manager Ghannam told Plaintiff that he had

been diagnosed with PTSD. (ECF No. 90-1:5).

12.    Plaintiff testified that Ms. Ghannam told him that she sent an email on June

27, 2022, informing Defendant Rowley of this diagnosis and that Plaintiff needed to move

to Unit Five. (*Id.* at 7).[2]

13.    Plaintiff never told Defendant Rowley that he had been diagnosed with

PTSD. Instead, he told Defendant Rowley about symptoms he was experiencing at that

time. (*Id.* at 6).

14.    On July 21, 2022, Plaintiff submitted a Request to Staff (RTS) addressed to

Dr. Weaks in which he stated that he had been receiving inadequate assistance from LCF

officials, including Defendant Rowley, to change his housing. (ECF No. 34-4:42-43).

---

[2] Neither Plaintiff nor defense counsel can locate and/or produce Ms. Ghannam's June 27, 2022
email to Defendant Rowley. (ECF No. 87-6:2).

15.     Plaintiff also explained that he refused housing on July 1, 2022, because LCF officials had not moved him from the area in which the alleged assault occurred. He requested Dr. Weaks consult with LCF officials so that his housing refusal might be excused based on mental health reasons. (*Id.*).

16.     The RTS response provided, "Dr. Weaks consulted ODOC Chief Mental Health and mental health will not be excusing the misconduct for mental health reasons." (*Id.*).

17.     In Plaintiff's subsequent Grievance, he stated that Defendant Rowley never executed his move to a different housing assignment or his assailant's move to a housing assignment different from Plaintiff's. He also stated that his previous refusal of housing was "to mitigate [PTSD] [] treated by Dr. Asan Khan." (*Id.* at 45).

18.     On August 11, 2022, Plaintiff submitted a RTS in which he stated that he was not refusing housing and that instead, he was waiting for Defendant Rowley to rectify the situation by moving him to a different unit. He also stated that on June 27, 2022, Ms. Ghannam had sent an email to Defendant Rowley, directing him to move Plaintiff to Unit Five. (*Id.* at 54-55).

19.     On September 6, 2022, Plaintiff submitted a RTS complaining that LCF still had not moved him from Unit Six, though they had moved other inmates. On the same date, Sgt. Borges responded that Plaintiff had been moved to general population. (*Id.* at 62-63).

20.    In the subsequent Grievance, in which Plaintiff was requesting an appointment with Dr. Weaks, he acknowledged that LCF had granted Plaintiff's request and moved him to general population. (*Id.* at 64).

21.    On November 28, 2022, LCF officials completed the PREA investigation into Plaintiff's sexual assault allegations. In its report, LCF concluded Plaintiff's allegations were unsubstantiated and noted that the timeliness of the investigation, or lack thereof, constituted a staff failure. (ECF No. 34-3:1, 3).

## IV.    Analysis[3]

An inmate's Eighth Amendment right to be protected from substantial risks of sexual assault by fellow prisoners is well established. *Howard v. Waide*, 534 F.3d 1227, 1242 (10th Cir. 2008). Plaintiff's claim against Defendant Rowley, however, is not based on this legal principle but instead, on events taking place after an alleged sexual assault occurred. Plaintiff contends that as a result of the assault, he suffered from PTSD. He claims his PTSD symptoms were exacerbated by Defendant Rowley's refusal to move him

---

[3] In his Motion, Defendant Rowley failed to argue that he is entitled to qualified immunity because Plaintiff's right was not clearly established at the time of the alleged violation. Given the quality of the summary judgment motions, the Court could understandably overlook a vaguely asserted argument. *See, cf., Apgar v. State*, No. No. 99–8029, 2000 WL 1059444, at *9 (10th Cir. Aug. 2, 2000) ("Given the quality of the summary judgment motions on both sides of this lawsuit, we are not surprised the district court was led astray."). But having examined each Motion, the undersigned is satisfied Defendant Rowley did not raise this issue. Therefore, the Court has not addressed it. *See Smith v. Williams*, No. 20-cv-00841-WJM-NYW, 2021 WL 4947353, at *17 (D. Colo. Oct. 13, 2021) ("[B]ecause the CDOC Defendants do not argue that this right was not clearly established at the time of the alleged violation, the court declines to address this prong of the qualified-immunity analysis." (internal citation omitted) (citing *Sayed v. Virginia*, 744 F. App'x 542 (10th Cir. 2018) ("[B]ecause [] Defendants mention the defense without engaging in the analysis, they have failed to raise the affirmative defense of qualified immunity."")).

from the unit in which the assault occurred and in which he came into frequent contact with his assailant. He further asserts that during the period in which he refused to move Plaintiff, Defendant Rowley transferred other inmates out of the same unit. Plaintiff claims Defendant Rowley's refusal to transfer him constituted deliberate indifference to his serious mental health needs.

The Eighth Amendment prohibits the infliction of cruel-and-unusual punishments. U.S. CONST. amend. VIII. This prohibition encompasses prison officials' deliberate indifference. *Howard*, 534 F.3d at 1235 (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). Deliberate indifference to a prisoner's serious medical needs, including those related to mental health, is proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05; *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980)). Though Defendant Rowley is not among LCF medical personnel, in intentionally denying or delaying access to medical care or intentionally interfering with medical treatment once prescribed, non-medical prison officials may manifest deliberate indifference. *Estelle*, 429 U.S. at 104-05.

To state a cognizable claim, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001) (quoting *Estelle*, 429 U.S. at 106). This standard includes both an objective component and a subjective component. *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer v.*

9

*Brennan*, 511 U.S. 825, 834 (1994)). "A medical need is [objectively] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Clark*, 895 F.3d at 1267 (citation omitted). The subjective component requires Plaintiff to establish that the defendant knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837). In his Motion, Defendant Rowley argues that the record does not create a question of fact on the objective or subjective component of Plaintiff's claim. As to the subjective component, the undersigned agrees.[4]

There is no evidence in the record that a medical professional ever informed Defendant Rowley that Plaintiff may suffer from PTSD and/or directed him to transfer Plaintiff from Unit Six. Plaintiff himself admits that he never told Defendant Rowley this information. (ECF No. 90-1:6). Instead, Plaintiff claims that in 2022, he informed Defendant Rowley of mental health symptoms he was experiencing. Plaintiff testified to the "perfect" example of how he shared his symptoms with Defendant Rowley:

> I didn't tell him I was exactly diagnosed with PTSD. I told him the symptoms
> I guess you would say, I told him -- oh, I have a perfect explanation. Here

---

[4] Based on this conclusion, it is unnecessary to determine whether a medical assessment in which a physician notes that PTSD is suspected is sufficient to meet the objective prong of a deliberate indifference claim. *Estelle*, 429 U.S. at 104.

we go. Okay. Rowley would try to lock me down and I had my cellmate and they would try to lock me down and I would have to use the restroom and I would pop out of my cell and make my cellie stand by my door when I use the restroom. Ms. Davis, which was the C/O . . . told me I need to stop popping out of my cell. I'm like, no, I'm not fixing to use the restroom with him in my cell.

(ECF No. 90-1:6).

Plaintiff also relies on Ms. Ghannam's alleged June 27, 2022 email informing Defendant Rowley of said diagnosis and telling him that Plaintiff should be moved to Unit Five. Courts have recognized that ignoring instructions from *medical personnel* is a valid basis for a deliberate indifference claim against a non-medical official. "[A] prison official who disregards without justification the instructions of a medical professional regarding the care and treatment of an inmate, thereby subjecting the inmate to an excessive risk of serious harm, may be liable under the Eighth Amendment." *Doty v. City & Cnty. of Broomfield*, No. 12-CV-01340-PAB-MJW, 2013 WL 5510646, at *8 (D. Colo. Oct. 4, 2013) (citing *Martinez v. Garden*, 430 F.3d 1302, 1305 (10th Cir. 2005) ("Knowledge of [the plaintiff inmate's] medical condition, coupled with the alleged failure to inform him of medical appointments or to arrange transportation, may give rise to an inference that defendants acted with deliberate indifference."); *Farrell v. J.E. Hamilton Corr. Ctr.,* 12 F. App'x 788, 790 (10th Cir. 2001) (ruling inmate stated claim for relief under the Eighth Amendment where defendant prison officers assigned him to a top bunk and placed him on heavy outdoor work detail despite note from doctors at a different facility indicating that he should be permanently placed in a bottom bunk because of three pins and arthritis in his hip); *Brown v. Coleman*, No. 94-7183, 1995 WL 409351, at *2 (10th Cir. July 12,

11

1995) (finding inmate stated a claim for relief under the Eighth Amendment where "the prison medical staff repeatedly prescribed surgery to rectify a medical problem and prison officials with no medical training allegedly disregarded this recommendation"). Ms. Ghannam, however, is not a physician or other medical personnel. (ECF No. 34-3:1, 5; ECF No. 90-1:6).

Construing all inferences in Plaintiff's favor, Plaintiff told Defendant Rowley that he wanted to move from Unit Six because he was experiencing mental health difficulties and Ms. Ghannam told Defendant Rowley that Plaintiff suffered from PTSD and should be moved to Unit Five. Without more specific information as to mental health risks faced by Plaintiff and a medical directive that Plaintiff must be moved out of Unit Six, Defendant Rowley cannot be imputed with subjective knowledge of a substantial risk of serious harm. There is no evidence in the record that by not transferring Plaintiff, Defendant Rowley interfered with prescribed medical treatment. Without such evidence, Plaintiff's claim fails. *Martinez*, 430 F.3d at 1305; *Farrell,* 12 F. App'x at 790. Accordingly, Defendant Rowley, in his individual capacity, is entitled to summary judgment against Plaintiff's Eighth Amendment deliberate indifference claim.[5]

## V. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Based on the foregoing findings, the undersigned recommends Defendant Rowley's Second Motion for Summary Judgment **(ECF No. 87)** be **GRANTED** and

---

[5] In light of the recommended disposition, it is unnecessary for the Court to address Defendant's remaining bases for his request for summary judgment.

Plaintiff's Motion for Summary Judgment **(ECF No. 90)** be **DENIED.** Adoption of this Recommendation will effectively vacate the Order (ECF No. 86) wherein the undersigned concluded it is appropriate to seek counsel for the Plaintiff. Accordingly, the Court should also advise the Pro Bono Committee of the Federal Bar Association to cease recruitment of an attorney to represent Plaintiff in these proceedings.

Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by **September 9, 2024**, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VI. STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on August 19, 2024.

_____

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE