**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RAHEEM LA'MONZE PLATER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-22-780-R** |
| | ) | |
| **CHRISTINE TOPPING, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

Plaintiff Raheem Plater[1] initiated this civil rights action under 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was incarcerated at the Lawton Correctional Facility. The matter was referred to United States Magistrate Judge Shon T. Erwin for initial proceedings in accordance with 28 U.S.C. § 636(b)(1)(B) and (C). Now before the court is Judge Erwin's Report and Recommendation [Doc. No. 96] recommending that Defendant Rowley's Second Motion for Summary Judgment [Doc. No. 87] be granted and Plaintiff's Motion for Summary Judgment [Doc. No. 90] be denied. Plaintiff filed a timely Objection [Doc. No. 97] and the Court must therefore make a de novo determination of those portions of the Report to which a specific objection is made. 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b)(3).

---

[1] Because Plaintiff is proceeding *pro se*, the Court affords his materials a liberal construction but does not act as his advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

In his Second Amended Complaint [Doc. Nos. 19, 20], Plaintiff asserts that Defendant Rowley acted with deliberate indifference to his serious mental health needs in violation of the Eighth Amendment. More specifically, Plaintiff contends that he suffered from post-traumatic stress disorder after being sexually assaulted and Defendant Rowley refused to transfer him out of the housing unit where the sexual assault occurred despite being aware of his mental health symptoms and diagnosis. Judge Erwin recommends that summary judgment be entered in Defendant Rowley's favor on this claim because the subjective component of the deliberate indifference standard is not satisfied. Plaintiff raises several objections to this recommendation, but none persuade the Court that it should reach a different conclusion.

First, Plaintiff contends that Defendant Rowley is not eligible for qualified immunity because he ignored an obvious risk to Plaintiff's mental health. Judge Erwin found that Defendant Rowley did not raise a qualified immunity defense and this objection is therefore irrelevant to the issues addressed in the Report.

Second, Plaintiff appears to argue that the Report took certain facts out of context or otherwise did not construe them in favor of the nonmoving party. Upon de novo review, the Court finds that the alleged discrepancies identified by Plaintiff are either immaterial or not sufficient to create a material factual dispute, even when construed in his favor.

Third, Plaintiff takes issue with the fact that the Report declined to reach any conclusion as to the objective component of the deliberate indifference standard. However, because the subjective component of the standard was not satisfied, there was no need to address the objective component or the other issues raised in Defendant Rowley's motion.

Plaintiff's remaining objections all speak to whether there was sufficient evidence to raise a triable issue of fact as to the subjective component of the deliberate indifference standard. The subjective component is satisfied if an

> official knows of and disregards an excessive risk to inmate health or safety. The official must be aware of the facts from which the inference of a substantial risk of serious harm could be drawn and also draw that inference. A plaintiff need not show that a prison official acted or failed to act believing that harm actually would befall an inmate, but rather that the official merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence such as whether the risk was obvious. An official disregards risk when he fails to take reasonable measures to abate the risk.

*Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quotation marks and citations omitted).

In support of his claim, Plaintiff testified that case manager Ghannam told Defendant Rowley of Plaintiff's PTSD diagnosis and his need to be moved to a different housing unit, Plaintiff told Defendant Rowley about his mental health symptoms, Defendant Rowley observed Plaintiff's mental health symptoms including panic attacks, and Defendant Rowley was aware that many of Plaintiff's phone calls to the crisis hotline went unanswered. Despite this knowledge, Plaintiff argues, Defendant Rowley did not transfer him out of the unit.

The undisputed facts show that on April 28, 2022, Plaintiff submitted a grievance stating that he was sexually assaulted by another inmate while he was housed in unit six of the jail. Doc. No. 34-3 at 9. Although Plaintiff initially reported that the alleged sexual

assault occurred in August or September 2020, he now claims that it occurred in October 2020. *See* Doc. No. 90 at ¶ 3; Doc. No. 19 at p. 7; Doc. No. 34-3 at 1, 5, 9. In any event, it is undisputed that Plaintiff did not report the incident until well over a year after it occurred. Plaintiff contends that he began experiencing PTSD triggers when he was placed in unit six because that is the location where the sexual assault occurred and the assailant was also housed in that unit.

Defendant Rowley was assigned as Plaintiff's case manager on approximately April 25, 2022, just a few days before he first reported the alleged sexual assault. Doc. No. 87-3 at 3. After reporting the incident, Plaintiff saw Dr. Kimberly Weaks for a mental health interview on May 3, 2022 and saw Dr. Asan Khan for a follow up appointment on June 6, 2022. Doc. No. 34-2 at 34-37. Although Dr. Khan noted a suspected diagnosis of PTSD and recommended a follow up appointment in two months, neither medical record indicates that Plaintiff needed to be relocated. *Id.* During this same time frame, from May 9, 2022 through June 5, 2022, Plaintiff placed numerous calls to an outside crisis hotline, however only a handful of the phone calls were answered. Doc. No. 90-2; Doc. No. 90-4. Plaintiff also submitted numerous grievances and requests to staff complaining that his housing assignment caused him to encounter the alleged assailant and requesting that he be transferred to a different facility. Doc. No. 34-4 at 6-46. In response to Plaintiff's June 10, 2022 request to staff, a staff member noted that he would have the opportunity to move housing pending the conclusion of the investigation into the sexual assault allegations. *Id.* at 21.

Plaintiff testified that on approximately June 27, 2022, case manager Ghannam told Defendant Rowley that Plaintiff had PTSD and needed to be relocated. Doc. No. 90-1 at 7. Two days later, on June 29, 2022, Plaintiff was seen by the mental health staff and reported experiencing triggers from being in the same unit where the alleged sexual assault occurred and indicated that he would prefer to be in a different environment. *Id.* at 38. Plaintiff also testified that Defendant Rowley observed Plaintiff experiencing mental health symptoms, and specifically nightmares and refusing to lock down because he did not want to use the restroom around his cellmate. Doc. No. 90-1 at 6.

On July 1, 2022, apparently frustrated by the facility's unwillingness to relocate him, Plaintiff "refused housing" which, according to his testimony, resulted in him getting reassigned to a different housing unit. Doc. No. 90-1 at 11. Plaintiff subsequently submitted a request to staff complaining about the misconduct he received for refusing housing and requesting that it be excused based on his mental health diagnosis. Doc. No. 34-4 at 42-43. The disposition of the request notes that Dr. Weaks was consulted and the misconduct would not be excused for mental health reasons. *Id.* Plaintiff was next seen by the mental health staff in mid-September, where he continued to complain about his cell assignment, even though he had apparently already been transferred. Doc. No. 34-2 at 40-42.

Construing these facts and drawing all reasonable inferences in Plaintiff's favor, there is not sufficient evidence from which a reasonable juror could conclude that Defendant Rowley disregarded an excessive risk to Plaintiff's health or safety. Even accepting that Defendant Rowley had knowledge of Plaintiff's PTSD diagnosis or was told by case manager Ghannam that Plaintiff needed to be moved to a different unit, there is no

evidence showing that Defendant Rowley ignored a medical directive to relocate Plaintiff or prevented him from accessing medical treatment. Further, although Plaintiff testified that Defendant Rowley observed symptoms such as nightmares and refusing to lock down in his cell, these behaviors are not so obvious or extreme as to put Defendant Rowley on notice that Plaintiff faced a substantial risk of serious harm from remaining on the unit or was experiencing a mental health crisis that required prompt medical attention. Plaintiff was evaluated by mental health staff multiple times after reporting the alleged sexual assault, there was an ongoing investigation into the sexual assault allegations, and the mental health staff declined to excuse Plaintiff's misconduct for refusing his housing assignment. Taking the record as a whole, the Court agrees with Judge Erwin's conclusion that without more specific information as to the mental health risks faced by Plaintiff or a medical directive to relocate him, a rational trier of fact could not find that Defendant Rowley was subjectively aware of an excessive risk to Plaintiff's mental health and disregarded that risk.

Accordingly, after conducting a de novo review, the Court ADOPTS the Report and Recommendation [Doc. No. 96]. Defendant Rowley's Second Motion for Summary Judgment is GRANTED [Doc. No. 87] and Plaintiff's Motion for Summary Judgment [Doc. No. 90] is DENIED. The Court further directs the Clerk of Court to notify the Pro Bono Committee of the Federal Bar Association to cease recruitment to represent Plaintiff in these proceedings.

IT IS SO ORDERED this 3rd day of October, 2024.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE